**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| WI-LAN, INC., | § | |
| | § | |
| Plaintiff, | § | CASE NO. 2:07-CV-473 |
| | § | |
| v. | § | Hon. T. John Ward |
| | § | |
| | § | JURY TRIAL |
| ACER, INC., ACER AMERICA | § | |
| CORPORATION, APPLE, INC., DELL, | § | |
| INC., GATEWAY, INC., HEWLETT- | § | |
| PACKARD COMPANY, LENOVO GROUP | § | |
| LTD., LENOVO (UNITED STATES) INC., | § | |
| SONY CORPORATION, SONY | § | |
| CORPORATION OF AMERICA, SONY | § | |
| ELECTRONICS, INC., SONY COMPUTER | § | |
| ENTERTAINMENT AMERICA, INC., | § | |
| TOSHIBA CORPORATION, TOSHIBA | § | |
| AMERICA, INC., TOSHIBA AMERICA | § | |
| INFORMATION SYSTEMS, INC., | § | |
| BROADCOM CORPORATION, INTEL | § | |
| CORPORATION, ATHEROS | § | |
| COMMUNICATIONS, INC., MARVELL | § | |
| SEMICONDUCTOR, INC., BEST BUY | § | |
| CO., INC., and CIRCUIT CITY STORES, | § | |
| INC. | § | |
| | § | |
| Defendants. | § | |

**HEWLETT-PACKARD COMPANY'S ANSWER,**
**AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Hewlett-Packard Company ("HP") answers plaintiff Wi-LAN Inc.'s ("Wi-LAN") Original Complaint as follows:

**PARTIES**

1.      On information and belief, HP admits that plaintiff Wi-LAN Inc. is a Canadian corporation with is principal place of business at 11 Holland Ave., Suite 608, Ottawa, Ontario, Canada.

Dockets.Justia.com

2.      The allegations of paragraph 2 are not directed to HP, and therefore no answer is required.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2, and therefore denies them.

3.      The allegations of paragraph 3 are not directed to HP, and therefore no answer is required.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3, and therefore denies them.

4.      The allegations of paragraph 4 are not directed to HP, and therefore no answer is required.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4, and therefore denies them.

5.      The allegations of paragraph 5 are not directed to HP, and therefore no answer is required.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5, and therefore denies them.

6.      HP admits that it is a Delaware corporation with its principle place of business at 3000 Hanover Street, Palo Alto, California 94304.  HP admits that it sells personal computers and other HP-branded products that contain components that upon information and belief provide the wireless functionality of one or more IEEE 802.11 standards and/or portions thereof in the United States, including the Eastern District of Texas.  HP admits that it may be served with process by serving its registered agent, CT Corporation System, at 350 N. St. Paul Street, Dallas, Texas 75201.  As to the second sentence of paragraph 6, the allegations are ambiguous and present issues regarding the conduct of third-parties and contain terms that are not defined. HP therefore denies those allegations, because HP lacks information sufficient to form a belief as to the truth of those allegations.  HP further denies any remaining allegations of paragraph 6.

7.      The allegations of paragraph 7 are not directed to HP, and therefore no answer is required.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7, and therefore denies them.

8.      The allegations of paragraph 8 are not directed to HP, and therefore no answer is required.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, and therefore denies them.

9.      The allegations of paragraph 9 are not directed to HP, and therefore no answer is required.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, and therefore denies them.

10.      The allegations of paragraph 10 are not directed to HP, and therefore no answer is required.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, and therefore denies them.

11.      The allegations of paragraph 11 are not directed to HP, and therefore no answer is required.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, and therefore denies them.

12.      The allegations of paragraph 12 are not directed to HP, and therefore no answer is required.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, and therefore denies them.

13.      The allegations of paragraph 13 are not directed to HP, and therefore no answer is required.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13, and therefore denies them.

14.    The allegations of paragraph 14 are not directed to HP, and therefore no answer is required.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14, and therefore denies them.

15.    The allegations of paragraph 15 are not directed to HP, and therefore no answer is required.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15, and therefore denies them.

## JURISDICTION AND VENUE

16.    These allegations set forth legal conclusions to which no response is required.  HP admits that Wi-LAN's complaint alleges infringement under the United States patent laws.  HP denies any remaining allegations in paragraph 16.

17.    HP admits that this Court has subject matter jurisdiction over patent law claims. Consistent with the denial of the allegations of paragraphs 20 and 21 below, on information and belief HP denies that Wi-LAN has standing, and accordingly denies that this Court has subject matter jurisdiction over Wi-LAN's patent claims in this particular case.   HP denies any remaining allegations in paragraph 17.

18.    HP admits that this Court has personal jurisdiction over it in this particular action and that it has conducted business in the State of Texas.  HP admits that its products have been sold in the United States, the State of Texas, and the Eastern District of Texas.  To the extent the remaining allegations of paragraph 18 are directed at HP, they are denied.  To the extent the allegations of paragraph 18 are directed to other entities, HP lacks sufficient information to admit or deny the allegations of paragraph 18, and therefore denies them.

19.    HP admits that venue is proper in the Eastern District of Texas for purposes of this particular action.

## **COUNT 1: PATENT INFRINGEMENT**

20.     With respect to the first sentence of paragraph 20, HP admits that U.S. Patent No. 5,282,222 (the "222 patent") is entitled "Method and Apparatus for Multiple Access Between Transceivers in Wireless Communications Using OFDM Spread Spectrum," and that the '222 patent bears an issuance date of January 25, 1994.  With respect to the second sentence of paragraph 20, HP is without knowledge or information sufficient to form a belief as to whether Wi-LAN is the assignee of rights to the '222 patent and therefore denies the allegations of the second sentence.  HP denies all other allegations of paragraph 20.

21.     With respect to the first sentence of paragraph 21, HP admit that U.S. Patent No. RE37,802 (the "802 patent") is entitled "Multicode Direct Sequence Spread Spectrum," and that the '802 patent bears an issuance date of July 23, 2002.  With respect to the second sentence of paragraph 21, HP is without knowledge or information sufficient to form a belief as to whether Wi-LAN is the assignee of rights to the '802 patent and therefore denies the allegations of the second sentence.  HP denies all other allegations of paragraph 21.

22.     HP denies the allegations of paragraph 22.

23.     HP denies the allegations of paragraph 23.

24.     HP denies the allegations of paragraph 24.

25.     HP denies the allegations of paragraph 25.

26.     HP denies the allegations of paragraph 26.

27.     HP denies the allegations of paragraph 27.

28.     HP denies the allegations of paragraph 28.

29.     HP denies the allegations of paragraph 29.

30.     HP denies the allegations of paragraph 30.

31.     HP denies the allegations of paragraph 31.

32.     HP denies the allegations of paragraph 32.

33.     HP denies the allegations of paragraph 33.

34.     HP denies the allegations of paragraph 34.

35.     HP denies the allegations of paragraph 35.

36.     HP denies the allegations of paragraph 36.

37.     HP denies the allegations of paragraph 37.

38.     HP denies the allegations of paragraph 38.

39.     HP is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 39 and therefore denies them.

40.     HP denies the allegations of paragraph 40.

## PRAYER FOR RELIEF

These paragraphs set forth the statement of relief requested by Wi-LAN to which no response is required. HP denies that Wi-LAN is entitled to any of the requested relief and denies any allegations.

## DEMAND FOR JURY TRIAL

This paragraph set forth Wi-LAN's request for a jury trial to which no response is required. HP also demands a jury trial on all issues triable by a jury

## AFFIRMATIVE DEFENSES

Subject to the responses above, HP alleges and asserts the following defenses in response to the allegations, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the affirmative defenses described below, subject to their responses above, HP specifically reserves all rights to allege additional affirmative defenses that become known through the course of discovery.

1.      HP does not infringe and has not infringed (not directly, contributorily, or by inducement) any claim of the '222 or the '802 patents, either literally or under the doctrine of equivalents.

2.      The claims of the '222 patent are invalid for failure to satisfy one or more of the requirements of Sections 100 *et seq.*, 101, 102, 103, 112, and 132 of Title 35 of the United States Code.

3.      The claims of the '802 patent are invalid for failure to satisfy one or more of the requirements of Sections 100 et seq., 101, 102, 103, 112, 132, and 251 of Title 35 of the United States Code.

4.      The claims of the '222 and '802 patents are unenforceable as asserted, in whole or in part, by doctrines of waiver, laches, and/or estoppel.

5.      The claims of the '222 and '802 patents are unenforceable as asserted, in whole or in part, by the doctrine of equitable estoppel.

6.      The claims of the '222 and '802 patents are unenforceable due to unclean hands.

7.      Wi-LAN cannot satisfy the requirements applicable to its request for injunctive relief and has an adequate remedy at law.

8.      Wi-LAN's alleged damages are limited because it has not satisfied the requirements for obtaining damages under 35 U.S.C. § 287, and the limitations period further bars past damages claims.

9.      One or more of the claims of the '802 patent are barred by intervening rights.

10.     One or more of the claims of the '802 patent are invalid under the doctrine of recapture.

11.     Wi-LAN's enforcement of the patents-in-suit is barred, in whole or in part, by the doctrine of prosecution history estoppel.

12.     Wi-LAN's request for relief is barred or otherwise limited by 35 U.S.C. § 288.

13.     If WI-LAN is entitled to any relief for alleged infringement of the patents-in-suit, some or all of that relief is limited under 28 U.S.C. § 1498(a).

14.     Wi-LAN's requested relief is barred or otherwise limited by restrictions on double recovery.

15.     Any award of enhanced or increased damages for willful infringement as pleaded in Wi-LAN's Complaint would violate the due process clause of the Fourteenth Amendment to the United States Constitution.

16.     Wi-LAN is not entitled to enhanced or increased damages for willful infringement, because HP has not engaged in any conduct that meets the applicable standard for willful infringement.

17.     HP reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States and any other defenses, at law or in equity, which may now exist or in the future may be available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS

HP, for its Counterclaims against Wi-LAN and upon information and belief, states as follows:

## THE PARTIES

1.     HP is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 3000 Hanover St., Palo Alto, California 94304-1112.

2.     On information and belief, Wi-LAN is a Canadian corporation with its principal place of business at 11 Holland Ave., Suite 608, Ottawa, Ontario, Canada.

## JURISDICTION AND VENUE

3.     Subject to HP's affirmative defenses and denials, including those concerning Wi-LAN's lack of standing, HP alleges that this Court has jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1367, 1338(a), 2201, and 2202, and venue for these Counterclaims is proper in this district.

4.     This Court has personal jurisdiction over Wi-LAN.

## FACTUAL BACKGROUND

5.     In its Complaint, Wi-LAN asserts that HP has infringed U.S. Patent Nos. RE37,802 (the "802 patent") and 5,282,222 (the "222 patent").

6.     The '802 and '222 patents are invalid and/or have not been and are not infringed by HP, directly or indirectly.   Additionally, as alleged herein, Wi-LAN has engaged in misconduct rendering the patents unenforceable.

7.     Consequently, there is an actual case or controversy between the parties over the non-infringement, invalidity, and/or unenforceability of the '802 and '222 patents.

## COUNT ONE

### Declaratory Judgment of Non-Infringement of U.S. Patent No. RE 37,802

8.     HP restates and incorporates by reference its allegations in paragraphs 1 through 7 of its Counterclaims.

9.     An actual case or controversy exists between HP and Wi-LAN as to whether the '802 patent is not infringed by HP.

10.     A judicial declaration is necessary and appropriate so that HP may ascertain its rights regarding the '802 patent.

11.    HP has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '802 patent, either literally or under the doctrine of equivalents.

12.    This is an exceptional case under 35 U.S.C. § 285 because Wi-LAN filed its Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT TWO

### Declaratory Judgment of Invalidity of U.S. Patent No. RE 37,802

13.    HP restates and incorporates by reference its allegations in paragraphs 1 through 12 of its Counterclaims.

14.    An actual case or controversy exists between HP and Wi-LAN as to whether the '802 patent is invalid.

15.    A judicial declaration is necessary and appropriate so that HP may ascertain its rights as to whether the '802 patent is invalid.

16.    The '802 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.,* 101, 102, 103, 112, 132, and 251.

17.    This is an exceptional case under 35 U.S.C. § 285 because Wi-LAN filed its Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT THREE

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 5,282,222

18.    HP restates and incorporates by reference its allegations in paragraphs 1 through 17 of its Counterclaims.

19.    An actual case or controversy exists between HP and Wi-LAN as to whether the '222 patent is not infringed by HP.

20.      A judicial declaration is necessary and appropriate so that HP may ascertain its rights regarding the '222 patent.

21.      HP has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '222 patent, either literally or under the doctrine of equivalents.

22.      This is an exceptional case under 35 U.S.C. § 285 because Wi-LAN filed its Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT FOUR

### Declaratory Judgment of Invalidity of U.S. Patent No. 5,282,222

23.      HP restates and incorporates by reference its allegations in paragraphs 1 through 22 of its Counterclaims.

24.      An actual case or controversy exists between HP and Wi-LAN as to whether the '222 patent is invalid.

25.      A judicial declaration is necessary and appropriate so that HP may ascertain its rights as to whether the '222 patent is invalid.

26.      The '222 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.,* 101, 102, 103, 112, and 132.

27.      This is an exceptional case under 35 U.S.C. § 285 because Wi-LAN filed its Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT FIVE

### Unclean Hands

28.      HP incorporates and realleges paragraphs 1 through 27 above as if set forth fully herein.

A.    **The IEEE's Rules And Policies Regarding Standards**

29.    In this action, Wi-LAN has alleged that certain products having wireless capability compliant with the IEEE 802.11 standards infringe the patents-in-suit.

30.    The IEEE is a professional association and leading developer of technical standards.  IEEE members include engineers, scientists and allied professionals whose technical interests relate to electrical and computer sciences, engineering, and related disciplines. Members may participate in the standards-setting process in working groups and/or subgroups called task groups.

31.    To protect against unscrupulous conduct by any member who seeks to benefit unfairly from, or to manipulate to its advantage, the IEEE's standard-setting process, and to enable the IEEE and its members to develop standards free from potentially blocking patents, the IEEE instituted policies and rules regarding the disclosure and licensing of patents.

32.    At all relevant times alleged herein, the IEEE's rules and policies required fairness and candor with respect to intellectual property.  By way of example only, the IEEE required its members to submit letters of assurance including either a general disclaimer to the effect that the patentee will not enforce any of its present or future patents whose use would be required to implement the proposed IEEE standard against any person or entity using the patents to comply with the standard or a statement that a license will be made available to all applicants without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.  For example, the IEEE's Standards Board Bylaws state that "IEEE standards may include the known use of patent(s), including patent applications, if there is technical justification in the opinion of the standards-developing committee and provided the IEEE receives assurance from the patent holder that it will license applicants under reasonable terms and conditions for the purpose of implementing the standard."

Additionally, the IEEE's Standards Board Bylaws further state that the assurance "shall be a letter that is in the form of either a) A general disclaimer to the effect that the patentee will not enforce any of its present or future patent(s) whose use would be required to implement the proposed IEEE standard against any person or entity using the patent(s) to comply with the standard or b) A statement that a license will be made available to all applicants without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination."

33.    The IEEE formed the 802.11 working group in 1990. The IEEE 802.11 standard is entitled "Wireless LAN Media Access Control (MAC) and Physical Layer (PHY) Specifications" and concerns wireless local area networking ("wireless LAN").

34.    In 1997, the IEEE formed two task groups: the 802.11a and 802.11b. The 802.11a task group was concerned with a standard for wireless LAN in the 5 GHz frequency band. The 802.11b task group was concerned with a standard for wireless LAN in the 2.4 GHz frequency band.

35.    Members of the IEEE participating in the standards setting process for 802.11a and 802.11b included Wi-LAN. As a result of its membership in the IEEE, Wi-LAN agreed, both explicitly and implicitly, that it would abide by the rules and policies of the IEEE.

**B.    Wi-LAN's Bad Faith Misrepresentations And Omissions**

36.    On July 11, 1998, the 802.11 working group met in La Jolla, California, in connection with the standards-setting process.

37.    Wi-LAN's president and CEO, Hatim Zaghloul, and Vice President of Engineering, Steven Knudsen, attended the July 1998 802.11 meeting in La Jolla.

38.    Numerous proposals had been submitted to the 802.11b task group for consideration prior to the July 1998 meeting in La Jolla, including proposals from Alantro

Communications ("Alantro"), Micrilor Inc. ("Micrilor"), Raytheon, KDD, Golden Bridge Technology, Harris Semiconductor ("Harris"), and Lucent Technologies ("Lucent").

39.    On the first day of the 802.11 meeting, July 6, 1998, Harris and Lucent submitted a joint proposal (the "Harris/Lucent Proposal") to the 802.11b task group.

40.    On July 7, 1998, Alantro, Micrilor, Harris, and Lucent presented their proposals to members of the 802.11b task group.

41.    On July 7, 1998, Wi-LAN submitted a letter to the chairman of the 802.11 working group offering to license its patents on fair, reasonable, and non-discriminatory terms and conditions with respect to 802.11b.

42.    On July 9, 1998, the 802.11b task group voted in favor of pursuing the Harris/Lucent Proposal, and decided not to pursue other proposals. For example, the 802.11b task group also considered proposals submitted by Alantro and Micrilor. The task group could have decided not to pursue any of the pending proposals.

43.    After the 802.11b task group voted to pursue the Harris/Lucent Proposal, it then recommended the Harris/Lucent Proposal to the 802.11 working group as the base for the 802.11b standard. The 802.11 working group accepted the 802.11b task group's recommendation.

44.    The IEEE 802.11 working group met again in September 1998 in Westford, Massachusetts.

45.    On September 10, 1998, four days before the September 1998 802.11 meeting, Wi-LAN filed an application to reissue U.S. Patent No. 5,555,268 (the "'268 patent"). This patent application (hereinafter, the "Reissue Application") later issued as the '802 patent. In prosecuting the Reissue Application, Wi-LAN submitted claims which Wi-LAN alleges are

infringed by certain products having wireless capability compliant with the IEEE 802.11 standards.

46.    On September 14, 1998, after filing the Reissue Application, Wi-LAN submitted a letter to the chairman of the 802.11 working group stating that Wi-LAN believed that the then-pending Reissue Application was not necessary to the practice of 802.11b.  Wi-LAN's letter states that "Wi-LAN Inc. hereby withdraws its previous IP statement dated July 9, 1998 to the extent that it implied that Wi-LAN existing US patent on multicode technology, US patent # 5,555,268, or another pending patent are necessary for the implementation of devices incorporating the IEEE802.11b draft standard."

47.    The IEEE 802.11 working group met again in November 1998 in Albuquerque, New Mexico.  Wi-LAN's president and CEO, Mr. Zaghloul, and Vice President of Engineering, Mr. Knudsen, attended the November 1998 meeting in Albuquerque, New Mexico.  In particular, Mr. Zaghloul attended a meeting of the 802.11b task group at the November 1998 Albuquerque 802.11 meeting.  With Mr. Zaghloul in attendance at that meeting, the 802.11b task group addressed Wi-LAN's September 14, 1998 letter.  At the meeting, Wi-LAN continued to represent that it believed that the Reissue Application was not necessary to the practice of 802.11b.  The meeting minutes for the 802.11b task group state "270 - r1 WLAN IP statement (They no longer feel that they have any IP related to standard)."  Based on Wi-LAN's assertions, the 802.11b task group confirmed that it "no longer feel[s] that WiLAN IP position applies to the proposed 802.11b standard."

48.    At all relevant times, Wi-LAN intentionally and in bad faith failed to inform the IEEE that Wi-LAN had filed the Reissue Application or of its contents, or that Wi-LAN intended

to assert its patents in bad faith against the 802.11b standard, without offering licenses on fair, reasonable and non-discriminatory terms.

### C.    Wi-LAN's Letters Of Assurance Regarding 802.11a And 802.11g

49.    On July 7, 1998, Wi-LAN submitted a letter to the chair of the IEEE 802.11 working group referencing the "Standards Recommendation Relating to Technology Being Proposed by Lucent Technologies and NTT for Inclusion in the IEEE P802.11a (OFDM) Standards Project" in the subject line and confirming that it was "prepared to license its existing patents directed to and necessary for the practice of the referenced OFDM Technology, if Lucent and NTT's proposal is adopted by the IEEE, on fair, reasonable and non-discriminatory terms and conditions." The 802.11 working group adopted the referenced proposal.

50.    On November 9, 1998, Wi-LAN submitted a letter of assurance referencing the "Standards Recommendation Relating to the IEEE P802.11a (OFDM) Draft Standards" in the subject line and confirming that it was "prepared to license its existing and future patents directed to and necessary for the practice of the referenced OFDM Technology, if the IEEE802.11a Draft Standard is adopted by the IEEE, on fair, reasonable and non-discriminatory terms and conditions." The 802.11 working group adopted the referenced standard.

51.    On November 29, 2000, Wi-LAN submitted a letter of assurance referencing the "Standards Recommendation Relating to the IEEE P802.11b Task Group G (OFDM) Draft Standards" in the subject line and confirming that it was "prepared to license its existing and future patents directed to and necessary for the practice of the referenced OFDM Technology, if the IEEE802.11b Task Group G Draft Standard is adopted by the IEEE, on fair, reasonable and non-discriminatory terms and conditions."

52.    Wi-LAN, intentionally and in bad faith, failed to offer licenses on fair, reasonable, and non-discriminatory terms, and instead is pursuing excessive royalties and injunctive relief in litigation.

53.    Wi-LAN intentionally and knowingly made material misrepresentations and/or omissions to the IEEE, its members, others relying on 802.11 including defendants in this action, and the public, including, as alleged herein, misrepresentations and/or omissions regarding its alleged patents and/or patent applications.  Wi-LAN had a duty to disclose facts regarding its alleged intellectual property, including as a result of its representations to the IEEE, as alleged herein.

54.    Wi-LAN's misrepresentations and/or omissions were knowingly false and made in bad faith with the intent to induce reliance.

55.    Upon information and belief, the IEEE and IEEE members reasonably relied on the foregoing misrepresentations and/or omissions in adopting the 802.11 standards and/or in investing substantial resources developing and marketing products accused of alleged infringement in this action.

56.    Wi-LAN's wrongful conduct as alleged herein constitutes unclean hands and renders the '802 and '222 patents unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, HP prays for judgment as follows:

a.    A judgment dismissing Wi-LAN's complaint against HP with prejudice;

b.    A judgment in favor of HP on all of its Counterclaims;

c.    A declaration that HP has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid claims of the '222 and/or '802 patents;

d.    A declaration that the '222 and '802 patents are invalid;

e.    A declaration that this case is exceptional and an award to HP of its reasonable costs and expenses of litigation, including attorneys' fees and expert witness fees;

f.    A judgment limiting or barring Wi-LAN's ability to enforce the '222 and '802 patents in equity;

g.    Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Local Rule CV-38, HP respectfully demands a jury trial of all issues triable to a jury in this action.


DATED:   January 25, 2008


By: _/s/_ _____
      David J. Levy
      State Bar No. 12264850
      *Lead Attorney*
      MORGAN, LEWIS & BOCKIUS LLP
      1000 Louisiana Street, Suite 1300
      Houston, TX 77002
      Telephone No. (713) 890-5170
      Telecopier No. (713) 890-5001
      Email: dlevy@morganlewis.com

      *Of Counsel:*
      Rick L. Rambo
      State Bar No. 00791479
      MORGAN, LEWIS & BOCKIUS LLP
      1000 Louisiana Street, Suite 1300
      Houston, TX 77002
      Telephone No. (713) 890-5175
      Telecopier No. (713) 890-5001
      Email: rambo@morganlewis.com

Jennifer Parker Ainsworth
State Bar No. 00784720
WILSON, SHEEHY, KNOWLES,
  ROBERTSON & CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
P.O. Box 7339 [75711]
Tyler, Texas 75701
Telephone No. (903) 509-5000
Telecopier No. (903) 509-5092
Email: jainsworth@wilsonlawfirm.com


ATTORNEYS FOR DEFENDANT/
COUNTER-PLAINTIFF
HEWLETT-PACKARD COMPANY


## CERTIFICATE OF SERVICE

I certify that this document was filed electronically pursuant to Local Rule CV-5(a) on

January 25, 2008.   Pursuant to Local Rule CV-5(a)(3)(A), this electronic filing acts to

electronically serve all counsel who have consented to electronic service via the Court's

CM/ECF system.


/s/_____
David J. Levy