## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| WI-LAN, INC., | ) |
| Plaintiff, | ) CASE NO. 2:07-CV-473 (TJW) |
| v. | ) JURY TRIAL |
| ACER, INC., ACER AMERICA CORPORATION, APPLE, INC., DELL, INC., GATEWAY, INC., HEWLETT-PACKARD COMPANY, LENOVO GROUP LTD., LENOVO (UNITED STATES) INC., SONY CORPORATION, SONY CORPORATION OF AMERICA, SONY ELECTRONICS, INC., SONY COMPUTER ENTERTAINMENT AMERICA, INC., TOSHIBA CORPORATION, TOSHIBA AMERICA, INC., TOSHIBA AMERICA INFORMATION SYSTEMS, INC., BROADCOM CORPORATION, INTEL CORPORATION, ATHEROS COMMUNICATIONS, INC., MARVELL SEMICONDUCTOR, INC., BEST BUY CO., INC., and CIRCUIT CITY STORES, INC. | ) |
| Defendants. | ) |

### DEFENDANT CIRCUIT CITY STORES, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Circuit City Stores, Inc. ("Defendant") answers plaintiff Wi-LAN Inc.'s ("Wi-LAN") Original Complaint as follows:

### PARTIES

1.  On information and belief, Defendant admits that plaintiff Wi-LAN Inc. is a Canadian corporation with is principal place of business at 11 Holland Ave., Suite 608, Ottawa, Ontario, Canada.

2. The allegations of paragraph 2 are not directed to Defendant, and therefore no answer is required. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2, and therefore denies them.

3. The allegations of paragraph 3 are not directed to Defendant, and therefore no answer is required. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3, and therefore denies them.

4. The allegations of paragraph 4 are not directed to Defendant, and therefore no answer is required. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4, and therefore denies them.

5. The allegations of paragraph 5 are not directed to Defendant, and therefore no answer is required. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5, and therefore denies them.

6. The allegations of paragraph 6 are not directed to Defendant, and therefore no answer is required. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6, and therefore denies them.

7. The allegations of paragraph 7 are not directed to Defendant, and therefore no answer is required. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7, and therefore denies them.

8. The allegations of paragraph 8 are not directed to Defendant, and therefore no answer is required. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, and therefore denies them.

9. The allegations of paragraph 9 are not directed to Defendant, and therefore no answer is required. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, and therefore denies them.

10. The allegations of paragraph 10 are not directed to Defendant, and therefore no answer is required. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, and therefore denies them.

11. The allegations of paragraph 11 are not directed to Defendant, and therefore no answer is required. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, and therefore denies them.

12. The allegations of paragraph 12 are not directed to Defendant, and therefore no answer is required. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, and therefore denies them.

13. The allegations of paragraph 13 are not directed to Defendant, and therefore no answer is required. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13, and therefore denies them.

14. The allegations of paragraph 14 are not directed to Defendant, and therefore no answer is required. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14, and therefore denies them.

15. Defendant admits that it is a Virginia corporation with its principal place of business at 9950 Mayland Drive, Richmond, VA 23233. Defendant admits that it may be served with process by serving its registered agent, Prentice Hall Corporation System, Inc., at 701 Brazos Street, Suite 1050, Austin, Texas 78701. As to the second sentence of paragraph 15, Defendant admits that it sells products manufactured by one or more of the other defendants to

this action in the United States and more particularly, in the Eastern District of Texas. The remaining allegations of the second sentence of paragraph 15 present issues regarding other defendants' conduct and fail to set forth definitions for terms in the allegations, and, in light of the ambiguities of the second sentence, Defendant lacks information sufficient to form a belief as to the truth of the matters asserted and therefore denies the allegations. Defendant, therefore, denies any remaining allegations of paragraph 15.

## JURISDICTION AND VENUE

16. These allegations set forth legal conclusions to which no response is required. Defendant admits that Wi-LAN's complaint alleges infringement under the United States patent laws. Defendant denies any remaining allegations in paragraph 16.

17. Defendant admits that this Court has subject matter jurisdiction over patent law claims. Consistent with the denial of the allegations of paragraphs 20 and 21 below, on information and belief Defendant denies that Wi-LAN has standing, and accordingly denies that this Court has subject matter jurisdiction over Wi-LAN's patent claims in this particular case and denies any allegations in this paragraph.

18. Defendant admits that this Court has personal jurisdiction over it in this particular action, and that it has conducted business in the State of Texas. Defendant admits that it has sold merchandise in the United States, the State of Texas, and the Eastern District of Texas. To the extent the remaining allegations of paragraph 18 are directed at Defendant, they are denied. To the extent the allegations of paragraph 18 are directed to other entities, Defendant lacks sufficient information to admit or deny the allegations of paragraph 18, and therefore denies them.

19. Defendant admits that venue is proper in the Eastern District of Texas for purposes of this particular action.

## **COUNT 1: PATENT INFRINGEMENT**

20. With respect to the first sentence of paragraph 20, Defendant admits that U.S. Patent No. 5, 282, 222 (the "'222 patent") is entitled "Method and Apparatus for Multiple Access Between Transceivers in Wireless Communication Using OFDM Spread Spectrum," and that the '222 patent bears an issuance date of January 25, 1994. With respect to the second sentence of paragraph 20, Defendant is without knowledge or information sufficient to form a belief as to whether Wi-LAN is the assignee of rights to the '222 patent and therefore denies the allegations of the second sentence. Defendant denies all other allegations of paragraph 20.

21. With respect to the first sentence of paragraph 21, Defendant admit that U.S. Patent No. RE37,802 (the "'802 Patent") is entitled "Multicode Direct Sequence Spread Spectrum," and that the '802 Patent bears an issuance date of July 23, 2002. With respect to the second sentence of paragraph 21, Defendant is without knowledge or information sufficient to form a belief as to whether Wi-LAN is the assignee of rights to the '802 Patent and therefore denies the allegations of the second sentence. Defendant denies all other allegations of paragraph 21.

22. Denied.
23. Denied.
24. Denied.
25. Denied.
26. Denied.
27. Denied.
28. Denied.
29. Denied.
30. Denied.

31. Denied.

32. Denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

39. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 39 and therefore denies them.

40. Denied.

## PRAYER FOR RELIEF

These paragraphs set forth the statement of relief requested by Wi-LAN to which no response is required. Defendant denies that Wi-LAN is entitled to any of the requested relief and denies any allegations.

## DEMAND FOR JURY TRIAL

This paragraph set forth Wi-LAN's request for a jury trial to which no response is required.

## AFFIRMATIVE DEFENSES

Subject to the responses above, Defendant alleges and asserts the following defenses in response to the allegations, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the affirmative defenses described below, subject to their responses above, Defendant

specifically reserves all rights to allege additional affirmative defenses that become known through the course of discovery.

1. Defendant does not infringe and has not infringed (not directly, contributorily, or by inducement) any claim of the '222 and '802 patents.

2. The claims of the '222 patent are invalid for failure to satisfy one or more of the requirements of Sections 100 *et seq.*, 101, 102, 103, 112 and 132 of Title 35 of the United States Code.

3. The claims of the '802 patent are invalid for failure to satisfy one or more of the requirements of Sections 100 *et seq.*, 101, 102, 103, 112, 132 and 251 of Title 35 of the United States Code.

4. The claims of the patents-in-suit are unenforceable as asserted, in whole or in part, by doctrines of waiver, laches, and/or estoppel.

5. The claims of the patents-in-suit are unenforceable as asserted, in whole or in part, by the doctrine of equitable estoppel.

6. The claims of the patents-in-suit are unenforceable as asserted, in whole or in part, by the doctrine of promissory estoppel.

7. The claims of the '222 and '802 patents are unenforceable due to unclean hands.

8. Defendant and its accused products are licensed, expressly or implicitly.

9. Wi-LAN cannot satisfy the requirements applicable to its request for injunctive relief and has an adequate remedy at law.

10. Wi-LAN's alleged damages are limited because it has not satisfied the requirements for obtaining damages under 35 U.S.C. § 287, and the limitations period further bars past damages claims.

11. One or more of the claims of the '802 patent are barred by intervening rights.

12. One or more of the claims of the '802 patent are invalid under the doctrine of recapture.

13. Wi-LAN's claims for relief are limited by the doctrines of full compensation, exhaustion, and/or first sale, and Wi-LAN is not entitled to a double recovery.

## COUNTERCLAIMS

Defendant, for its Counterclaims against plaintiff and upon information and belief, states as follows:

## THE PARTIES

1. Defendant Circuit City Stores, Inc. ("Defendant") is a Virginia corporation organized and existing under the laws of the Commonwealth of Virginia with its principal place of business at 9950 Mayland Drive, Richmond, VA 23233.

2. On information and belief, plaintiff Wi-LAN Inc. ("Wi-LAN") is a Canadian corporation with its principal place of business at 11 Holland Ave., Suite 608, Ottawa, Ontario, Canada.

## JURISDICTION AND VENUE

3. Subject to Defendant's affirmative defenses and denials, including those concerning Wi-LAN's lack of standing, Defendant alleges that this Court has jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1367, 1338(a), 2201, and 2202, and venue for these Counterclaims is proper in this district.

4. This Court has personal jurisdiction over Wi-LAN.

## FACTUAL BACKGROUND

5. In its Complaint, Wi-LAN asserts that Defendant has infringed U.S. Patent Nos. RE37,802 (the "'802 patent") and 5,282,222 ("'222 patent").

6. The '802 and '222 patents are invalid and/or have not been and are not infringed by Defendant, directly or indirectly. Additionally, as alleged herein, Wi-LAN has engaged in misconduct rendering the patents unenforceable.

7. Consequently, there is an actual case or controversy between the parties over the non-infringement, invalidity, and/or unenforceability of the '802 and '222 patents.

### COUNT ONE

### Declaratory Judgment of Non-Infringement of U.S. Patent No. RE37,802

8. Defendant restates and incorporates by reference its allegations in paragraphs 1 through 7 of its Counterclaims.

9. An actual case or controversy exists between Defendant and Wi-LAN as to whether the '802 patent is not infringed by Defendant.

10. A judicial declaration is necessary and appropriate so that Defendant may ascertain its rights regarding the '802 patent.

11. Defendant has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '802 patent.

12. This is an exceptional case under 35 U.S.C. § 285 because Wi-LAN filed its Complaint with knowledge of the facts stated in this Counterclaim.

### COUNT TWO

### Declaratory Judgment of Invalidity of U.S. Patent No. RE37,802

13. Defendant restates and incorporates by reference its allegations in paragraphs 1 through 12 of its Counterclaims.

14. An actual case or controversy exists between Defendant and Wi-LAN as to whether the '802 patent is invalid.

15. A judicial declaration is necessary and appropriate so that Defendant may ascertain its rights as to whether the '802 patent is invalid.

16. The '802 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.,* 101, 102, 103, 112, 132 and 251.

17. This is an exceptional case under 35 U.S.C. § 285 because Wi-LAN filed its Complaint with knowledge of the facts stated in this Counterclaim.

### COUNT THREE

### Declaratory Judgment of Non-Infringement of U.S. Patent No. 5,282,222

18. Defendant restates and incorporates by reference its allegations in paragraphs 1 through 17 of its Counterclaims.

19. An actual case or controversy exists between Defendant and Wi-LAN as to whether the '222 patent is not infringed by Defendant.

20. A judicial declaration is necessary and appropriate so that Defendant may ascertain its rights regarding the '222 patent.

21. Defendant has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '222 patent.

22. This is an exceptional case under 35 U.S.C. § 285 because Wi-LAN filed its Complaint with knowledge of the facts stated in this Counterclaim.

### COUNT FOUR

### Declaratory Judgment of Invalidity of U.S. Patent No. 5,282,222

23. Defendant restates and incorporates by reference its allegations in paragraphs 1 through 22 of its Counterclaims.

24. An actual case or controversy exists between Defendant and Wi-LAN as to whether the '222 patent is invalid.

25. A judicial declaration is necessary and appropriate so that Defendant may ascertain its rights as to whether the '222 patent is invalid.

26. The '222 patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 *et seq.,* 101, 102, 103, 112 and 132.

27. This is an exceptional case under 35 U.S.C. § 285 because Wi-LAN filed its Complaint with knowledge of the facts stated in this Counterclaim.

## COUNT FIVE

### Breach of Contract

28. Defendant incorporates and realleges paragraphs 1 through 27 above as if set forth fully herein.

**A.     The IEEE's Rules And Policies Regarding Standards**

29. In this action, Wi-LAN has alleged that certain products having wireless capability compliant with the IEEE 802.11 standards infringe the patents-in-suit.

30. The IEEE is a professional association and leading developer of technical standards. IEEE members include engineers, scientists and allied professionals whose technical interests relate to electrical and computer sciences, engineering and related disciplines. Members may participate in the standards-setting process in working groups and/or subgroups called task groups.

31. To protect against unscrupulous conduct by any member who seeks to benefit unfairly from, or to manipulate to its advantage, the IEEE's standard-setting process, and to enable the IEEE and its members to develop standards free from potentially blocking patents, the IEEE instituted policies and rules regarding the disclosure and licensing of patents.

32. At all relevant times alleged herein, the IEEE's rules and policies required fairness and candor with respect to intellectual property. By way of example only, the IEEE required its members to submit letters of assurance including either a general disclaimer to the effect that the patentee will not enforce any of its present or future patents whose use would be required to implement the proposed IEEE standard against any person or entity using the patents to comply with the standard or a statement that a license will be made available to all applicants without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination. For example, the IEEE's Standards Board Bylaws state that "IEEE standards may include the known use of patent(s), including patent applications, if there is technical justification in the opinion of the standards-developing committee and provided the IEEE receives assurance from the patent holder that it will license applicants under reasonable terms and conditions for the purpose of implementing the standard." Additionally, the IEEE's Standards Board Bylaws further state that the assurance "shall be a letter that is in the form of either a) A general disclaimer to the effect that the patentee will not enforce any of its present or future patent(s) whose use would be required to implement the proposed IEEE standard against any person or entity using the patent(s) to comply with the standard or b) A statement that a license will be made available to all applicants without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination."

33. The IEEE formed the 802.11 working group in 1990. The IEEE 802.11 standard is entitled "Wireless LAN Media Access Control (MAC) and Physical Layer (PHY) Specifications" and concerns wireless local area networking ("wireless LAN").

34. In 1997, the IEEE formed two task groups: the 802.11a and 802.11b. The 802.11a task group was concerned with a standard for wireless LAN in the 5 GHz frequency band. The 802.11b task group was concerned with a standard for wireless LAN in the 2.4 GHz frequency band.

35. Members of the IEEE participating in the standards setting process for 802.11a and 802.11b included Wi-LAN. As a result of its membership in the IEEE, Wi-LAN agreed, both explicitly and implicitly, that it would abide by the rules and policies of the IEEE.

      B.      **Wi-LAN's Bad Faith Misrepresentations And Omissions**

36. On July 6-11, 1998, the 802.11 working group met in La Jolla, California in connection with the standards-setting process.

37. Wi-LAN's president and CEO, Hatim Zaghloul, and Vice President of Engineering, Steven Knudsen, attended the July 1998 802.11 meeting in La Jolla.

38. Numerous proposals had been submitted to the 802.11b task group for consideration prior to the July 1998 meeting in La Jolla, including proposals from Alantro Communications ("Alantro"), Micrilor Inc. ("Micrilor"), Raytheon, KDD, Golden Bridge Technology, Harris Semiconductor ("Harris"), and Lucent Technologies ("Lucent").

39. On the first day of the 802.11 meeting, July 6, 1998, Harris and Lucent submitted a joint proposal (the "Harris/Lucent Proposal") to the 802.11b task group.

40. On July 7, 1998, Alantro, Micrilor, Harris and Lucent presented their proposals to members of the 802.11b task group.

41. On July 7, 1998, Wi-LAN submitted a letter to the chairman of the 802.11 working group offering to license its patents on fair, reasonable and non-discriminatory terms and conditions with respect to 802.11b.

13

42. On July 9, 1998, the 802.11b task group voted in favor of pursuing the Harris/Lucent Proposal, and decided not to pursue other proposals. For example, the 802.11b task group also considered proposals submitted by Alantro and Micrilor. The task group could have decided not to pursue any of the pending proposals.

43. After the 802.11b task group voted to pursue the Harris/Lucent Proposal, it then recommended the Harris/Lucent Proposal to the 802.11 working group as the base for the 802.11b standard. The 802.11 working group accepted the 802.11b task group's recommendation.

44. The IEEE 802.11 working group met again in September 1998 in Westford, Massachusetts.

45. On September 10, 1998, four days before the September 1998 802.11 meeting, Wi-LAN filed an application to reissue U.S. Patent No. 5,555,268 (the '268 patent"). This patent application (hereinafter, the "Reissue Application") later issued as the '802 patent. In prosecuting the Reissue Application, Wi-LAN submitted claims which Wi-LAN alleges are infringed by certain products having wireless capability compliant with the IEEE 802.11 standards.

46. On September 14, 1998, after filing the Reissue Application, Wi-LAN submitted a letter to the chairman of the 802.11 working group stating that Wi-LAN believed that the then-pending Reissue Application was not necessary to the practice of 802.11b. Wi-LAN's letter states that "Wi-LAN Inc. hereby withdraws its previous IP statement dated July 9, 1998 to the extent that it implied that Wi-LAN existing US on multicode patent technology, US patent # 5,555,268, or another pending patent are necessary for the implementation of devices incorporating the IEEE802.11b draft standard."

47. The IEEE 802.11 working group met again in November 1998 in Albuquerque, New Mexico. Wi-LAN's president and CEO, Mr. Zaghloul, and Vice President of Engineering, Mr. Knudsen, attended the November 1998 meeting in Albuquerque, New Mexico. In particular, Mr. Zaghloul attended a meeting of the 802.11b task group at the November 1998 Albuquerque 802.11 meeting. With Mr. Zaghloul in attendance at that meeting, the 802.11b task group addressed Wi-LAN's September 14, 1998 letter. At the meeting, Wi-LAN continued to represent that it believed that the Reissue Application was not necessary to the practice of 802.11b. The meeting minutes for the 802.11b task group state "270 - r1 WLAN IP statement (They no longer feel that they have any IP related to standard)." Based on Wi-LAN's assertions, the 802.11b task group confirmed that it "no longer feel[s] that WiLAN IP position applies to the proposed 802.11b standard."

48. At all relevant times, Wi-LAN intentionally and in bad faith failed to inform the IEEE that Wi-LAN had filed the Reissue Application or of its contents, or that Wi-LAN intended to assert its patents in bad faith against the 802.11b standard, without offering licenses on fair, reasonable and non-discriminatory terms.

    **C.**    **Wi-LAN's Letters Of Assurance Regarding 802.11a And 802.11g**

49. On July 7, 1998, Wi-LAN submitted a letter to the chair of the IEEE 802.11 working group referencing the "Standards Recommendation Relating to Technology Being Proposed by Lucent Technologies and NTT for Inclusion in the IEEE P802.11a (OFDM) Standards Project" in the subject line and confirming that it was "prepared to license its existing patents directed to and necessary for the practice of the referenced OFDM Technology, if Lucent and NTT's proposal is adopted by the IEEE, on fair, reasonable and non-discriminatory terms and conditions." The 802.11 working group adopted the referenced proposal.

50. On November 9, 1998, Wi-LAN submitted a letter of assurance referencing the "Standards Recommendation Relating to the IEEE P802.11a (OFDM) Draft Standards" in the subject line and confirming that it was "prepared to license its existing and future patents directed to and necessary for the practice of the referenced OFDM Technology, if the IEEE802.11a Draft Standard is adopted by the IEEE, on fair, reasonable and non-discriminatory terms and conditions." The 802.11 working group adopted the referenced standard.

51. On November 29, 2000, Wi-LAN submitted a letter of assurance referencing the "Standards Recommendation Relating to the IEEE P802.11b Task Group G (OFDM) Draft Standards" in the subject line and confirming that it was "prepared to license its existing and future patents directed to and necessary for the practice of the referenced OFDM technology, if the IEEE802.11b Task Group G Draft Standard is adopted by the IEEE, on fair, reasonable and non-discriminatory terms and conditions."

52. Wi-LAN, intentionally and in bad faith, failed to offer licenses on fair, reasonable and non-discriminatory terms, and instead is pursuing excessive royalties and injunctive relief in litigation.

53. Wi-LAN intentionally and knowingly and without reasonable belief as to their truthfulness made material misrepresentations and/or omissions to the IEEE, its members, others relying on 802.11 including defendants in this action, and the public, including, as alleged herein, misrepresentations and/or omissions regarding its alleged patents and/or patent applications. Wi-LAN had a duty to disclose facts regarding its alleged intellectual property, including as a result of its representations to the IEEE, as alleged herein.

54. Wi-LAN's misrepresentations and/or omissions were knowingly false and made in bad faith with the intent to induce reliance.

55. The IEEE and its members, including defendants from whom Defendant obtained products for distribution now alleged by Wi-LAN to be infringing, reasonably relied on the foregoing misrepresentations and/or omissions in adopting 802.11 standards. These defendants further relied on the foregoing misrepresentations and/or omissions, and/or the 802.11 standards, in investing substantial resources developing and marketing products accused of alleged infringement in this action.

56. Wi-LAN made representations and engaged in other conduct, including Wi-LAN's representations that it did not have intellectual property necessary to practice 802.11b, and that it would license its existing and future patents relating to 802.11 on fair, reasonable and non-discriminatory terms and conditions.

57. Wi-LAN's representations and other conduct constituted promises to the IEEE and its members, including defendants from whom Defendant obtained products which are now alleged by Wi-LAN to be infringing. By making those promises, Wi-LAN knew or reasonably should have known that they would be relied upon.

58. The IEEE and its members, including defendants from whom Defendant obtained products for distribution which are now alleged by Wi-LAN to be infringing, reasonably relied on the foregoing promises in adopting 802.11 standards. These defendants further reasonably relied on the foregoing promises, and/or the 802.11 standards, in investing substantial resources developing and marketing products accused of alleged infringement in this action.

59. For consideration for IEEE membership and participation, Wi-LAN entered into an express and/or implied contract with the IEEE's members, or alternatively, with the IEEE to which IEEE members and others are third-party beneficiaries, in which Wi-LAN agreed, among other things, to abide by the IEEE's policies and rules. The IEEE rules and policies, whether

formal or informal, including all stipulations, requirements and representations in any form, constitute a contract between Wi-LAN and the IEEE's members, or alternatively between Wi-LAN and the IEEE, to which IEEE members and others are third-party beneficiaries.

60. In accordance with the foregoing, the IEEE's rules and policies require its members to submit letters of assurance including either a general disclaimer to the effect that the patentee will not enforce any of its present or future patents whose use would be required to implement the proposed IEEE standard against any person or entity using the patents to comply with the standard or a statements that a license will be made available to all applicants without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination.

61. Furthermore, Wi-LAN's representations and other conduct, including the letters of assurance offering licenses on fair, reasonable and non-discriminatory terms, created express and/or implied contracts with the IEEE and its members, or alternatively between Wi-LAN and the IEEE, to which IEEE members and others are third-party beneficiaries.

62. Wi-LAN breached its contractual obligations, including by failing to offer licenses for the '802 and '222 patents on fair, reasonable and non-discriminatory terms, by seeking to enjoin Defendant from selling and distributing 802.11 compliant products distributed or sold to it by IEEE members, and through misrepresentations and/or omissions regarding its patents and/or patent applications.

63. Defendant has incurred damages, and will be further damaged in the future due to Wi-LAN's breach of its contractual obligations.

## COUNT SIX

### Unclean Hands

64. Defendant incorporates and realleges paragraphs 1 through 63 above as if set forth fully herein.

65. Wi-LAN's wrongful conduct as alleged herein constitutes unclean hands and renders the '802 and '222 patents unenforceable.

### PRAYER FOR RELIEF

WHEREFORE, Defendant prays for judgment as follows:

a. A judgment dismissing Wi-LAN's complaint against Defendant with prejudice;

b. A judgment in favor of Defendant on all of its Counterclaims;

c. A declaration that Defendant has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid claims of the '222 and '802 patents;

d. A declaration that the '222 and '802 patents are invalid;

e. An award to Defendant for the amount of damages as proven at trial;

f. A declaration that this case is exceptional and an award to Defendant of its reasonable costs and expenses of litigation, including attorneys' fees and expert witness fees;

g. A judgment limiting or barring Wi-LAN's ability to enforce the '222 and '802 patents in equity;

h. A judgment requiring Wi-LAN's specific performance under its contract with IEEE and/or IEEE members to grant licenses to Defendant and defendants on fair, reasonable, and non-discriminatory terms and conditions;

i. An award to Defendant of, and a declaration that Defendant has, a royalty-free license for the '222 and '802 patents;

j. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Local Rule CV-38, Circuit City Stores, Inc. respectfully demands a jury trial of all issues triable to a jury in this action.

Dated:  January 25, 2008                                      Respectfully submitted,

/s/ Trey Yarbrough
Trey Yarbrough
Bar No. 22133500
YARBROUGH ♦ WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Tel: (903) 595-3111
Fax: (903) 595-0191
Email:  trey@yw-lawfirm.com

*Of Counsel*:

Charles M. Allen
Goodman, Allen & Filetti, PLLC
4501 Highwoods Parkway, Suite 210
Glen Allen, VA 23060
Tel:  (804) 346-5087
Fax:  (804) 346-5954
Email:  CAllen@goodmanallen.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of DEFENDANT CIRCUIT CITY STORES, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS on January 25, 2008, via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Those who have not consented to service in such manner are being served via facsimile or first class mail.

/s/ Trey Yarbrough
Trey Yarbrough