# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| WI-LAN, INC., | § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 2:07-CV-473 (TJW) |
| ACER, INC., ET AL., | § § § | |
| Defendants. | § § § | **CONSOLIDATED WITH:** |
| WI-LAN, INC., | § § § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 2:07-CV-474 (TJW) |
| WESTELL TECHNOLOGIES, INC., ET AL., | § § | |
| Defendants. | § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is plaintiff Wi-Lan, Inc., defendant Acer, Inc., and various other defendants' (collectively, "defendants") joint request to enter a Protective Order in this case pursuant to Federal Rule of Civil Procedure 26(c). (Dkt. No. 322). The parties agree that an order is necessary to protect the confidential information being exchanged. The parties have been able to resolve all disputes pertaining to the provisions of the proposed Protective Order, save for one. After carefully considering the parties' written submissions, the Court grants the parties' motion and enters the Protective Order submitted by the defendants for the reasons set forth in this opinion.

## I. Background

The parties have spent a year negotiating the terms of the Protective Order and have resolved all disputes but one. The parties have agreed to an "Attorneys' Eyes Only" designation in the Protective Order. The "Attorneys' Eyes Only" provision limits access to a party's confidential documents to outside counsel and up to three in-house counsel for each of the nineteen defendants as well as for Wi-LAN. Wi-LAN has also agreed to place further restrictions on its own in-house counsel by way of a unilateral "Prosecution Bar" which precludes access to (i) defendants' source code and other technical documents describing the structure and operation of defendants' products, (ii) defendants' research and development activities, and (iii) defendants' business plans and strategies, including plans and strategies for its products and intellectual property. The "Prosecution Bar" prevents Wi-LAN employees, officers, directors, in-house counsel, experts or consultants who personally receive any material designated "Attorneys' Eyes Only" from using that information in the prosecution of patents. Wi-LAN represents to the court that it has agreed to these restrictions to help facilitate entry of a protective order and to address defendants' concern that such information could potentially be used, even inadvertently, to further strengthen Wi-LAN's intellectual property position with respect to the defendants. Under Wi-LAN's current organizational structure, Wi-LAN's in-house attorneys managing the litigation are also involved in the prosecution of its patent applications. The "Prosecution Bar," therefore, takes away Wi-LAN's in-house counsel's access to defendants' documents relating to their research and development efforts, business plans and strategies, and other documents describing the structure and operation of the defendants' products.

Wi-LAN neither contends, nor do defendants admit that defendants' in-house counsel is involved in the prosecution of patent applications. A bi-lateral "Prosecution Bar," therefore, would allow defendants' in-house counsel more access to Wi-LAN's confidential information than Wi-LAN's in-house counsel has to defendants' confidential information. In an effort for reciprocity, Wi-LAN attempts to limit what confidential information defendants' in-house counsel may have access to by requesting a provision whereby documents labeled "Attorneys' Eyes Only" are further subjected to an "Employee Bar."[1] The "Employee Bar" provision concerns whether defendants' in-house attorneys may have access to Wi-LAN's documents relating to Wi-LAN's ongoing research and development and its current and future business plans and strategies. The parties are unable to agree on the inclusion of the "Employee Bar" provision in the Protective Order and have looked to the Court for resolution.

**II. Legal Standard**

Rule 26(c) of the Federal Rules of Civil Procedure authorizes a district court to protect parties from "undue burden or expense" in discovery by ordering certain trade secret or other confidential information "not be disclosed or be disclosed in a designated way." *See* Fed. R. Civ.

---

[1] Plaintiff's "Employee Bar" provision provides:
> 7. "ATTORNEYS' EYES ONLY – SUBJECT TO EMPLOYEE BAR" OR "SUBJECT TO PROSECUTION BAR": these designations may be used only for ATTORNEYS' EYES ONLY information, documents, and things the Designating Party believes in good faith would create a substantial risk of serious injury if known to in-house attorneys or other employees of a Receiving Party, including, but not limited to, among the following categories of documents:
> (a) a Designating Party's source code and other technical documents describing the structure and operation of the Designating Party's products;
> (b) a Designating Party's research and development activities; and
> (c) a Designating party's business planning, development, and strategy documents.
> These designations, however, shall not be used for a Designating Party's sales records regarding its products, license agreements or related communications with parties to the agreements. In addition, the "ATTORNEYS' EYES ONLY - SUBJECT TO EMPLOYEE BAR" designation shall not be used for any document created prior to January 1, 2006.'

Proposed Order of Plaintiff, Joint Mtn, Dkt. No. 322, Ex. 6, at 3.

P. 26(c). In determining whether to issue a protective order barring one party's attorney access to information, the Court must consider the risk and potential danger of "inadvertent or accidental disclosure," and weigh that risk against the potential burden and impairment that the protective order may have on the other parties' ability to prosecute or defend against its claims. *U.S. Steel Corp. v. United States*, 730 F. 2d 1465, 1468 (Fed. Cir. 1984).

In balancing the aforementioned considerations, the Court must evaluate the facts on a case by case basis, focusing specifically on the "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party." *U.S. Steel Corp.*, 730 F.2d at 1468. Factors that may be considered in the balancing include: (1) whether the person receiving the confidential information is involved in competitive decision making or scientific research relating to the subject matter of the patent, (2) the risk and potential danger of disclosure and (3) the hardship and prejudice imposed by the restriction. *Infosint S.A. v. H. Lundbeck A.S.*, 2007 WL 1467784, 2 (S.D.N.Y. 2007); *see also Intel Corp. v. Via Technologies, Inc.*, 198 F.R.D. 525, 528-29 (N.D. Cal. 2000) (finding that in absence of evidence indicating actual prejudice, the movant failed to show good cause to modify a Protective Order). While no factor is dispositive, "if counsel is a competitive decision maker, most all of the policy concerns underlying the rule allowing courts to deny attorneys' access to confidential information typically are present." *S.T. Sales Tech Holdings, LLC. V. Daimler Chrysler Co., LLC*, No. 6:07-CV-346, 2008 WL 5634214, 3 n.5. (E.D. Tex. Mar. 14, 2008). The risk of disclosure is determined by assessing whether "an unacceptable opportunity for inadvertent disclosure" is created by counsel's access to the confidential information. *U.S. Steel Corp.*, 730 F. 2d at 1468. The movant bears the burden of demonstrating that good cause exists for including its proposed restriction. *See In Re*

*Terra Int'l, Inc.*, 134 F. 3d 302, 306 (5th Cir. 1998).

**III. Analysis**

The Court finds that Wi-LAN has not met its burden to demonstrate that good cause exists for its proposed "Employee Bar" restriction. Wi-LAN has failed to show that defendants' in-house counsel are "competitive decision makers." Further, it has not specifically demonstrated any potential harm that would result from not including the "Employee Bar" provision in the Protective Order. These findings counsel the Court to not include the "Employee Bar" restriction in the Protective Order. Wi-LAN's proposed "Employee Bar" provision is not prejudicial to defendants' ability to litigate this case even though it may cause inconvenience. The absence of this factor is insufficient to outweigh the other findings.

**1. Competitive Decision Makers**

The Federal Circuit has stated that a "competitive decision maker" refers to counsel's "activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.." *U.S. Steel Corp.*, 730 F.2d at 1468, n. 3. Wi-LAN argues that defendants' in-house counsel are "competitive decision makers" because of their role in managing the defense and settlement of Wi-LAN's intellectual property claims in this litigation, and because "it is their job to see that the company is successful in competing with Wi-LAN regarding intellectual property rights." Joint Motion at 8. Wi-LAN further analogizes its position as a non-practicing entity with the situation in *S.T. Sales* where a party which manufactured and sold products was found to be a competitor of a non-practicing entity. This argument is unpersuasive.

5

In *S.T. Sales*, the counsel in question had an expansive role in many of the business owner's other business ventures which extended well-beyond the typical role of counsel, even counsel who might work with an entity for years. *Id*. at 5. The counsel in question had served as a director, outside counsel and in-house counsel in companies whose business models revolved around the acquisition, enforcement, through litigation, and licensing of patents. *Id*. In *S.T. Sales*, the court closely analyzed the counsel's "activities, association, and relationship with [the] client" and concluded that he was a "competitive decision maker." The court found important that counsel in question was someone who had sued on similar patents against the same defendants many times before. *Id*. In the current case, however, Wi-LAN has not presented substantive allegations that would rise to the level of the factors before the Court in *S.T. Sales*. Wi-LAN has not alleged that defendants' in house counsel are involved in advising and participating in defendants' decision making to the extent necessary to consider them "competitive decision makers."

In addition, courts have found that a company's sole legal advisor and personnel manger "advising his employer on a gamut of legal issues, including contracts, marketing, and employment" is sufficiently involved with the company to be a "competitive decision maker." *See, e.g., Brown Bag Software v. Symantec Corp.*, 960 F. 2d 1465, 1471 (9th Cir. 1992). Here, Wi-LAN has not shown defendants' in-house counsel's involvement in anything other than litigation and settlement negotiations. *Brown Bag*, therefore, is also distinguishable from the instant case.

Unlike the situations in *S.T. Sales* and *Brown Bag*, Wi-LAN does not allege that the defendants' in house counsel are involved as directors, in patent prosecution, or that specific

individuals are extensively involved in enforcing and licensing patents. Wi-LAN has neither produced affidavits nor put forward any other evidence indicating that any of defendants' in-house counsel has extensive involvement in decision making. Instead, Wi-LAN simply argues that because in-house counsel may be involved in managing and settling this case, they are "competitive decision makers." Because Wi-LAN has not specifically addressed the factual circumstances surrounding each of defendants' individual counsel's activities, association, and relationship with defendants, this factor counsels against inclusion of Wi-LAN's proposed "Employee Bar".

**2. Potential for Harm and Risks of Disclosure**

Next the Court addresses the potential for harm and risks of disclosure. Wi-LAN has not specifically identified any of defendants' in-house counsel that pose a risk of inadvertent disclosure. Instead, Wi-LAN has broadly identified the harm from disclosure of confidential material and argued that the risk of disclosure outweighs defendants' need for confidential information. Wi-LAN argues that defendants must rely more heavily on the advice and understanding of their in-house counsel in making competitive decisions because the in-house counsel better understand the legal and financial motivations underlying Wi-LAN's decision making. Joint Motion at 12. Such a conclusory argument will not carry the day. Nothing before the Court suggests defendants' in-house counsel plays an imperative role in defendants' business strategies. There is no allegation of involvement in either patent prosecution, research, product development, or other significant business decisions. Wi-LAN, therefore, has failed to specifically show sufficient harm that would result from not including its proposed "Employee Bar" provision in the Protective Order.

Wi-LAN relies extensively on a passage from the *Intel* opinion, where the court denied in-house counsel access to certain documents in part because it would put in-house counsel "in the untenable position of having either to refuse to offer crucial legal advice at times or risk disclosing protected information." *Intel Corp.*, 198 F.R.D. at 531. The *Intel* court, however, found that in-house counsel's extensive involvement in licensing made counsel a "competitive decision maker," "involved in types of decision making that create an unacceptable risk of disclosure." *Id*. at 530. As discussed above, here, the Court finds that Wi-LAN has not been able to show that defendants' in-house counsel are "competitive decision makers" or show that their involvement in specific decisions creates an unacceptable risk of disclosure.

Wi-LAN also compares the risk of inadvertent disclosure in this case to the potential risk in *Brown Bag*, where the Ninth Circuit found that a protective order was properly issued. *Brown Bag*, however, is also distinguishable as almost a year into that suit, Brown Bag's retained counsel withdrew and was replaced by in-house counsel necessitating further restrictions on confidential information. *Brown Bag*, 960 F.2d at 1469. The instant case does not present circumstances similar to *Brown Bag* that would merit inclusion of the "Employee Bar" provision.

The Court finds that Wi-LAN's broad and conclusory suggestion that the harm from inadvertent disclosure of confidential material necessitates inclusion of the "Employee Bar" provision is insufficient to show the requisite clearly defined, particular, and specific demonstration of the risk of harm. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981). This consideration, therefore, also counsels against inclusion of Wi-LAN's proposed "Employee Bar."

3. **Prejudice to Defendants' In-House Counsel's Ability to Litigate this Case**

Defendants have alleged that inclusion of the "Employee Bar" would impede their ability to litigate this case. They contend that "in addition to issues concerning the alleged infringement, invalidity and unenforceability of the patents-in-suit, numerous other legal and factual issues will be litigated. These issues would include technical standards, corporate conduct in standards-setting organizations, and corporate promises to license on fair, reasonable and non-discriminatory ("FRAND") terms." Joint Motion at 27. Defendants contend that the "Employee Bar" would hinder their case on these relevant issues. However, in order to prevail on this factor, defendants must show that the protective order would actually prejudice the presentation of their case, not merely increase the difficulty of managing the litigation. *Intel Corp.*, 198 F.R.D. at 528. As Wi-LAN has pointed out, defendants are represented by competent counsel capable of handling the technical nature of the case and have not been presented with any other extenuating circumstances by which their ability to manage the case has been prejudiced. Joint Motion at 14. While defendants have described the inconvenience that adopting plaintiff's proposed provision would have on managing their case, they have failed to show any potential prejudice. *Intel Corp.*, 198 F.R.D. at 529. This consideration, therefore, only slightly favors the inclusion of Wi-LAN's proposed "Employee Bar."

### IV. Conclusion

Wi-LAN has neither identified defendants' particular in-house counsel that pose a risk of disclosure nor demonstrated how defendants' in-house counsel could be considered "competitive decision makers." It is not enough that defendants have failed to show prejudice by inclusion of the "Employee Bar." The Court finds, therefore, Wi-LAN has not met its burden of showing that good cause exists for the inclusion of its proposed "Employee Bar" provision. There is no need

to impose further restrictions on discovery at this time. The Court, therefore, adopts defendants' proposed Protective Order.

SIGNED this 23rd day of June, 2009.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE