IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| WI-LAN, INC., | § § § | |
| Plaintiff, | § | |
| v. | § § | CASE NO. 2:07-CV-473-TJW |
| ACER, INC., *et al.*, | § § § | |
| Defendants. | § § | |
| _____ | § § | CONSOLIDATED WITH: |
| WI-LAN, INC., | § § § | |
| Plaintiff, | § § | CASE NO. 2:07-CV-474-TJW |
| v. | § § | |
| WESTELL TECHNOLOGIES, INC., *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Broadcom Corporation's ("Broadcom") Motion to Compel Plaintiff Wi-LAN, Inc. ("Wi-LAN") to Produce Relevant Documents (Dkt. No. 492) and Defendants' Motion to Compel Production of Documents (Dkt. No. 493). In its motion (Dkt. No. 492), Broadcom moves for the production of a report written by Dr. Peter Driessen (the "Driessen Report") and other documents disclosed to Broadcom's attorneys during due diligence of a potential purchase of certain Wi-LAN intellectual property interests in late 2005 and early 2006. The remaining Defendants filed an almost identical motion seeking production of the Driessen report and related documents based on the same facts and legal arguments in

1

Broadcom's motion (Dkt. No. 493). Having considered the briefing, exhibits, and the applicable law, the Court is of the opinion that the motions should be DENIED.

**I. Background**

Beginning in the summer of 2005, Wi-LAN contemplated selling its patent assets to a variety of third parties. Broadcom was one of the potential purchasers of Wi-LAN's assets and undertook due diligence in late 2005 and early 2006 related to the transaction. After signing a non-disclosure agreement, Broadcom began a three-phase transaction and due diligence process outlined by Wi-LAN for all potential purchasers. In Phase 1, the potential purchasers were to review the confidential information memorandum provided by Wi-LAN and submit a non-binding offer to purchase Wi-LAN's assets. In Phase 2, the potential purchasers who submitted substantial offers would conduct their due diligence, during which Wi-Lan would permit access to a "Data Room" that contained confidential Wi-LAN materials. The potential purchasers would then submit binding proposals and move on to Phase 3, the transaction closing. Broadcom submitted a non-binding proposal to purchase Wi-LAN's assets and Wi-LAN permitted Broadcom to move to Phase 2. Accordingly, Broadcom's outside counsel, McAndrews, Held & Malloy, Ltd. ("McAndrews") traveled to Calgary, Alberta, Canada to conduct due diligence on behalf of Broadcom at the offices of Wi-LAN's outside counsel, McCarthy Tétrault LLP, where they were permitted access to the Data Room. At this point in time, the Data Room did not contain the Driessen Report or any other privileged materials that are the subject of the Defendants' motions.

Broadcom then submitted a binding purchase offer to Wi-LAN, with the condition that Broadcom be given "full and unfettered" access to all documents relevant to the Wi-LAN patent

2

assets, including opinion letters. In making this request, Broadcom's attorneys stated that the disclosure of the files of Wi-LAN's outside prosecution counsel, including opinion letters, was "standard procedure" and would not constitute a waiver of privilege. Broadcom's outside counsel also provided Wi-LAN with an article titled "Privilege Issues in Intellectual Property Due Diligence" that cited two cases suggesting that production of prosecution files to a potential purchaser of intellectual property assets during due diligence would be covered by the common interest doctrine and, thus, would not constitute a waiver of privilege. Wi-LAN then made the Driessen report and other privileged, patent-related materials available to Broadcom's outside counsel in the Data Room under certain restrictive conditions.

The Driessen Report was written by Dr. Peter Driessen, an electrical engineering professor, in January of 2001 at the request of outside intellectual property counsel retained by Wi-LAN. At the time, Wi-LAN was considering patent infringement lawsuits in the United States based on a pending patent application, and Wi-LAN's counsel requested Dr. Driessen's opinion on certain technical matters related to that patent application. According to Wi-LAN, the purpose of the Driessen Report was to assist Wi-LAN's intellectual property attorney in rendering legal advice to Wi-LAN regarding the potential litigation over the pending patent application.

**II. Analysis**

In their motions, Defendants seek production of the Driessen Report and argue that it is relevant because it concludes that the allowed claims of the '802 patent are invalid in light of prior art. Broadcom also seeks production of all other documents concerning the patens-in-suit shown to Broadcom in the Data Room during its due diligence related to the potential purchase

of Wi-LAN's patent assets. In addition, Broadcom seeks to depose Dr. Driessen. The Defendants contend that the Driessen Report is not privileged because it was written by a non-attorney years before this litigation commenced. Defendants also argue that even if the Driessen Report was privileged when written, the fact that it and other privileged documents were shown to Broadcom during the purchase due diligence waives any applicable privilege.

Wi-LAN, however, claims that the Driessen Report is covered by the attorney-client privilege and work product doctrine because it was written at the request of Wi-LAN's then patent attorney while he was investigating a potential lawsuit regarding the infringement of a pending patent application. Plaintiff also argues that the Driessen Report was only given to Broadcom at Broadcom's request and after Broadcom's assertions that producing the files of Wi-LAN's prosecution counsel, including opinion letters, would not constitute a waiver of privilege because the disclosure would be subject to the common interest privilege. Plaintiff, thus, asserts that Broadcom is estopped from now arguing that the production of the Driessen Report and other privileged documents was a waiver of privilege.

"Questions of privilege that arise in the course of adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989) (citing FED.R.EVID. 501). Because the patent claims at issue in this case arise under federal law and are before the court on federal question jurisdiction, the federal common law governing attorney-client, work product, and common interest privileges will apply. *See Willy v. Administrative Review Board*, 423 F.3d 483, 495 (5th Cir. 2005) (applying federal common law of privilege to claim arising under federal law and asserting federal question jurisdiction).

Additionally, the Federal Circuit applies regional circuit law to procedural questions that are not themselves substantive patent law issues so long as they do not (1) pertain to patent law, (2) bear an essential relationship to matters committed to the Federal Circuit's exclusive control by statute, or (3) clearly implicate the jurisprudential responsibilities of the Federal Circuit in a field within its exclusive jurisdiction. *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001). In *GFI*, the Federal Circuit held that "[b]ecause waiver by the disclosure of privileged material does not meet any of these criteria, we apply the law of the Fifth Circuit." *Id*. (citing *Dorf & Stanton Comm., Inc. v. Molson Breweries*, 100 F.3d 919, 922 (Fed. Cir. 1996)). Similarly, in *In re Regents of the University of California*, the Federal Circuit applied the law of the regional circuit in determining whether a licensor and licensee were joint clients for purposes of privilege under the common interest doctrine because this was a procedural issue that was not unique to patent law. 101 F.3d 1386, 1390 n. 2 (Fed. Cir. 1984). Accordingly, the Court will apply the Fifth Circuit law of privilege in determining whether the Driessen Report is privileged and whether its disclosure to Broadcom during the purchase due diligence constitutes a waiver of privilege.

First, the Court must determine whether the Driessen Report is privileged either under the attorney-client or the work product privileges. Defendants argue that it is not subject to the attorney-client privilege or work product protection because it was authored by a non-attorney professor who was personally acquainted with the company's founders and had prepared another technical report for Wi-LAN in the past which Wi-LAN agrees is not privilege. Additionally, Defendants argue that the report is not addressed to any attorney and does not contain any designation or other indication that it is privileged or subject to work product protection.

5

Plaintiff, however, argues that the Driessen Report is subject to the attorney-client privilege and work product protection because it was prepared by an expert at the request of Wi-LAN's attorney in anticipation of litigation. Plaintiff also asserts that the Driessen Report was obtained, and was the subject of a communication between Wi-LAN's attorney and Wi-LAN, for the purpose of securing legal services and assistance in legal proceedings for Wi-LAN.

The attorney-client privilege protects certain confidential communications between a client and an attorney. *U.S. v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978). In order to invoke the attorney-client privilege, the claimant must establish the following four elements: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of a bar of a court or his subordinate and in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client without the presence of strangers for the purposes of securing primarily either an opinion on law or legal services or assistance in some legal proceeding and not for the purpose of committing a crime or a tort; and (4) the privilege has been claimed and not waived by the client. *Id.*

Additionally, the work-product privilege protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A). Litigation is not required to be imminent in order for documents and tangible things to be "prepared in anticipation of litigation." *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000). In order to qualify as work product where litigation is not imminent, the "primary motivating purpose" behind the creation of the document must have

been to aid in litigation. *Id.*; *Performance Aftermarket Parts Group, Ltd. v. TI Group Auto Sys., Inc.*, 2007 WL 1428628, * 2 (S.D.Tex. May 11, 2007). As a part of work product immunity, a party cannot obtain discovery of "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial." FED. R. CIV. P. 26(b)(4)(B). In fact, absent special circumstances, a party cannot even obtain discovery of the name of the consulting expert. *See Hoover v. U.S. Dept. of the Interior*, 611 F.2d 1132, 1142 n. 13 (5th Cir.1980) (holding that a "party seeking disclosure under Rule 26(b)(4)(B) carries a heavy burden") (citing *Barkwell v. Sturm Ruger Co.*, 79 F.R.D. 444, 446 (D.Alaska 1978)); *see also Ager v. Jane C. Stormont Hasp. & Training Sch. for Nurses*, 622 F.2d 496, 502 (10th Cir.1980) (holding that "the identity, and other collateral information concerning an expert who is retained or specially employed in anticipation of litigation, but not expected to be called as a witness at trial, is not discoverable" absent special circumstances).

Wi-LAN has provided ample facts demonstrating that Dr. Driessen drafted the Driessen Report in early 2001 at the request of Wi-LAN's intellectual property attorney who needed the report in order to aid him in rendering legal advice to Wi-LAN regarding potential litigation over a pending patent application. Under these circumstances, Dr. Driessen was clearly a consulting expert hired by Wi-LAN's intellectual property attorney to render his opinion in aid of potential litigation over Wi-LAN's pending patent application. Accordingly, the Court finds that the Driessen Report is protected by the work product immunity.

Having established that the Driessen Report is work product, the Court must now determine whether Wi-LAN's disclosure of the Driessen Report constitutes a waiver of the work product privilege. Defendants assert that Wi-LAN waived privilege when it disclosed the

Driessen Report to Broadcom during the due diligence related to Broadcom's potential purchase of Wi-LAN's intellectual property assets. Conversely, Wi-LAN contends that providing the Driessen Report to Broadcom did not constitute a waiver of privilege because the limited Data Room access under which Broadcom was allowed to view the Driessen Report protected all applicable privileges pursuant to the common interest doctrine. Both sides spend the bulk of their arguments discussing whether the Driessen Report was subject to the common interest doctrine at the time of its disclosure to Broadcom. However, the Court need not reach that issue because it finds that Wi-LAN's disclosure of the Driessen Report to Broadcom in the Data Room during the purchase due diligence does not constitute a waiver of the work product immunity, regardless of whether or not the common interest doctrine applies.

The work product privilege is very different from the attorney-client privilege. Although the attorney-client privilege exists to protect the confidential communications between an attorney and client and, thus, is waived by disclosure of confidential communications to third parties, the work product protection exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) (citing *United States v. American Telephone & Telegraph Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)). "Therefore, the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Id.*; *see also Datatreasury Corp. v. Wells Fargo & Co.*, 2007 U.S. Dist. LEXIS 97801, * 12 (E.D. Tex. 2007); *Aiken v. Tex. Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 623 n. 2 (E.D. Tex. 1993). Such disclosure only waives the work product privilege if it is given to adversaries or is "treated in a manner that substantially increases the likelihood that an adversary

will come into possession of the material." *Advance Technology Incubator, Inc. v. Sharp Corp.*, 2009 WL 4432569, * 2 (E.D. Tex. 2009) (citing *Ferko v. NASCAR*, 219 F.R.D. 396, 400-01 (E.D.Tex.2003); *S.E.C. v. Brady*, 238 F.R.D. 429, 444 (N.D.Tex.2006)). The burden of proving waiver of the work product privileged falls on the party asserting waiver. *Datatreasury*, 2007 U.S. Dist. LEXIS 97801, at * 13; *Ferko*, 219 F.R.D. at 401. For example, in *United States v. American Telephone and Telegraph Co.*, the court held that information shared with a government agency having a common interest against a third party did not constitute waiver of the work product privilege because the governmental agency was not an adversary and the disclosure of the information to the governmental agency did not substantially increase the likelihood that an adversary would come into possession of the information. 642 F.2d at 1290.

Wi-LAN disclosed the Driessen Report to Broadcom while the parties were negotiating Broadcom's purchase of Wi-LAN's patent assets. Additionally, Broadcom signed a non-disclosure agreement before reviewing any of Wi-LAN confidential information and was only provided with the Driessen Report after taking the position that production of privileged documents from Wi-LAN's outside patent counsel, which included the Driessen Report, would be protected under the common interest privilege and would not constitute a waiver of privilege. Under these circumstances, Broadcom cannot be seen as an adversary at the time of the purchase due diligence such that Wi-LAN's disclosure of the Driessen Report constituted a waiver of the work product privilege. Additionally, the existence of the non-disclosure agreement and the limitations on copying or removing documents from the Data Room make it clear that the disclosure of the Driessen Report to Broadcom did not substantially increase the likelihood that an adversary would come into possession of the Driessen Report or other privileged information

disclosed to Broadcom in the Data Room. Accordingly, the Court finds that Wi-LAN's disclosure of the Driessen Report to Broadcom under these circumstances did not constitute a waiver of the work product privilege.

Based on this finding, the Court need not reach the question of whether Wi-LAN's disclosure of the Driessen Report to Broadcom during the purchase due diligence is subject to the common interest privilege. However, the Court does note that, because Broadcom, in attempting to obtain access to the Driessen Report and other privileged documents, asserted that disclosure of Wi-LAN's outside counsel's files would be subject to the common interest privilege and would not constitute a waiver of privilege, Broadcom is estopped from now arguing that the disclosure was a waiver of privilege and was not covered by the common interest privilege. *See Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 (1984) (holding that estoppel is an equitable doctrine invoked to avoid injustice in particular cases). Principals of equity likewise require that the remaining Defendants not benefit from Broadcom's bad acts by doing precisely what Broadcom is estopped from doing—i.e., obtaining the Driessen Report based on the argument that its disclosure to Broadcom resulted in a waiver of privilege when that disclosure was based on Broadcom's assurance that the report would be covered by the common interest doctrine and that disclosure would not constitute a waiver of privilege. Accordingly, the remaining defendants are also estopped from obtaining the Driessen Report under these circumstances.

### III. Conclusion

For the reasons stated above, Broadcom's Motion to Compel Plaintiff Wi-LAN, Inc. to Produce Relevant Documents (Dkt. No. 492) and Defendants' Motion to Compel Production of Documents (Dkt. No. 493) are DENIED.

IT IS SO ORDERED.

SIGNED this 18th day of October, 2010.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE